UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RITA M. SCUPIEN,                                              15-CV-1077-MJR
                                                              DECISION AND ORDER
                        Plaintiff,

            -v-

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

                        Defendant.
_____

     Pursuant to 28 U.S.C. §636(c), the parties have consented to disposition of this case by a United States Magistrate Judge.  (Dkt. No. 5).

     Plaintiff Rita M. Scupien brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying her Social Security disability insurance benefits under the Social Security Act (the "Act").  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the following reasons, Scupien's motion (Dkt. No. 9) is granted, the Commissioner's motion (Dkt. No. 10) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

I.   *Procedural History*

     On April 12, 2012, Scupien filed an application for a period of disability and disability insurance benefits ("DIB") alleging disability since June 1, 2010 due to "disc

---

[1]     Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is automatically substituted for the previously named defendant Carolyn W. Colvin.  The Clerk of Court is directed to amend the caption accordingly.

fusion, neuroma on foot, carpal tunnel, and desmoid tumor in stomach." (*See* Tr. 71).[2] Scupien's date last insured ("DLI") is December 31, 2013. (*Id.*). Her DIB application was denied on July 12, 2012 (Tr. 70-78), after which she requested a hearing before an Administrative Law Judge (Tr. 85-86). On February 14, 2014, Scupien, represented by counsel, appeared by videoconference before Administrative Law Judge Karen Jackson (the "ALJ") for a hearing. (Tr. 38-69). On March 24, 2014, the ALJ issued a decision denying Scupien's claim. (Tr. 21-37). Scupien requested review by the Appeals Council (Tr. 18-20), but on October 30, 2015, the Appeals Council denied Scupien's request, making the ALJ's decision the final decision of the Commissioner (Tr. 1-5). This action followed.

II.     *Summary of the Evidence*

      A. *Medical Evidence*

      Scupien underwent a hysterectomy in 1994. Thirteen years later, in 2007, a CT scan revealed a mass in Scupien's anterior abdominal wall inferior to her umbilicus, and she underwent surgery for removal of a desmoid tumor.[3] In June 2010, Scupien visited physician assistant Christopher Puleo for a follow up examination, and Puleo found her to be in stable condition. (Tr. 218-19). In April 2011, Scupien visited Pembroke Family Medicine complaining of mild abdominal pain. An examination showed that she was healthy and well developed. (Tr. 351-55). She returned to Pembroke Family Medicine in May 2011 for an annual routine examination and was again found to be in good health. (Tr. 349-50). In September 2011, Scupien visited Dr. Nefertiti DuPont for a CT

---

[2]     References to "Tr." are to the administrative record in this case.
[3]     A desmoid tumor is "[a] nodule or relatively large mass of unusually firm scarlike connective tissue resulting from active proliferation of fibroblasts, occurring most frequently in the abdominal muscles of women who have borne children; the fibroblasts infiltrate surrounding muscle and fascia." Stedman's Medical Dictionary (28th ed. 2006).

scan to evaluate her desmoid tumor.  Dr. DuPont assessed, among other things, history

of desmoid tumor, status post resection with no evidence of disease.  (Tr. 335-38).

In January 2012, Scupien visited Dr. Mary Obear at Pembroke Family Medicine

to discuss disability.  Scupien advised Dr. Obear that she could not work due to multiple

medical problems, including chronic back and leg pain and significant foot pain from

Morton's neuroma.[4]  Dr. Obear assessed backache unspecified and Morton's neuroma,

and she directed Scupien to take over-the-counter pain medication and to maintain a

healthy lifestyle.  (Tr. 343-44).

On June 18, 2012, Scupien visited Dr. Raheel Ahmed for a consultative internal

medicine examination.  Dr. Ahmed performed a physical exam and diagnosed Scupien

with history of desmoid tumors status post surgery, status post carpal tunnel release

surgery x2, and history of lumbar spine surgery.   He rendered the following functional

assessment/medical source statement:

> The number of hours this claimant could be expected to
> stand and/or walk in an eight hour day would be five hours.
> The number of hours this claimant could be expected to sit in
> an eight hour day would be five hours.  Assistive devices,
> none needed.  The amount of weight this claimant could lift
> and carry frequently would be 25 lbs and occasionally would
> be 50 lbs.  The slight weight limitation is because of the
> claimant's history of carpal tunnel as well as low back
> surgery.   There are no manipulative limitations.   The
> claimant has good dexterity and intact fine motor skills.  No
> relevant visual, communicative or workplace environmental
> limitations.

(Tr. 357-60).

---

[4]      Morton's neuroma is "a painful, tender focal mass lesion on one of the plantar interdigital nerves
of the foot, most often that which is situated between the third and fourth metatarsal bones; attributed to
either compression of the nerve between the heads of the adjacent metacarpal bones, or traction being
placed on the nerve as it crosses the anterior edge of the deep transverse metatarsal ligament."
Stedman's Medical Dictionary (28th ed. 2006).

On July 3, 2012, Scupien visited Dr. Rick Baker complaining of left wrist irritation and right foot pain.  Dr. Baker noted that a lumbar MRI of L4-L5 revealed moderate neural foramen encroachment.  He assessed right foot pain and carpal tunnel in left wrist and referred Scupien to Dr. Nicholas Rutledge, a podiatrist.  (Tr. 389-92).  On July 11, 2012, Scupien visited Dr. Rutledge complaining of heel pain and burning pain in her right forefoot.  An ultrasound revealed a stump neuroma in the right second interspace and plantar fasciitis in the right heel.  (Tr. 374).

In August 2012, Scupien visited Dr. Marion Richardson for persistent back pain with right-sided radicular pain.  Dr. Richardson noted that Scupien previously received epidural steroid injections, but the injections were unhelpful.  On physical examination, Scupien displayed a decreased range of motion and her gait was slightly antalgic.[5] Straight leg test and heel/toe were negative.   Dr. Richardson prescribed pain medication.  (Tr. 382-84).  Later that month, Scupien visited Dr. Baker complaining of sciatic nerve pain.  (Tr. 393-94).  At a follow-up appointment with Dr. Richardson on September 4, 2012, Scupien reported that she was doing much better on account of her medication, and that she had been swimming and riding her bicycle.  The two discussed Pilates and yoga as possible activities.  (Tr. 381).  At an appointment on October 1, 2012, Scupien advised Dr. Richardson that she was sleeping more "and does not seem to be 'herself,'" although she did report swimming, bicycling, and doing yoga.  She advised Dr. Richardson that she would like to decrease, but not discontinue, her medication.  (Tr. 380).  At an October 29, 2012 appointment, Dr. Richardson noted that

---

[5]     Antalgic gait is "a characteristic gait resulting from pain on weight-bearing in which the stance phase of gait is shortened on the affected side."  Stedman's Medical Dictionary (28th ed. 2006).

Scupien had stopped taking her medication, and he suggested that she try different medication. (Tr. 379).

On January 3, 2014, Scupien returned to Dr. Baker complaining of acute left shoulder pain and acute left knee pain with edema, among other things. Dr. Baker noted reduced abduction to sixty degrees in Scupien's left shoulder and tenderness across her left upper back with movement and trace edema. A neurologic exam revealed paresthesia in the third, fourth, and fifth fingers of her left hand, while a left shoulder x-ray revealed acromioclavicular degenerative changes. Due to the severity of Scupien's pain, Dr. Baker referred her to Dr. Seth Coren. (Tr. 395-97). Scupien visited Dr. Coren three days later complaining of cervical spine pain, left shoulder pain, and left knee pain. An x-ray of Scupien's cervical spine revealed foraminal narrowing at C4-5 and C5-6 bilaterally as well as osteoarthritic changes and degenerative disc disease, a left shoulder x-ray revealed osteoarthritic changes in the left AC joint with inferior osteophytes, and a left knee x-ray revealed moderate narrowing of the medial articular cartilage space consistent with arthritis. Dr. Coren assessed cervical radiculopathy, osteoarthritis of the left knee, and left shoulder pain. He administered steroid injections to Scupien's shoulder and knee. (Tr. 398-402).

On January 30, 2014, Dr. Baker completed a medical source statement finding that Scupien can stand for thirty minutes at a time, sit for fifteen minutes at a time, work only one to two hours per day, frequently lift five pounds, occasionally bend and stoop, and that she cannot use either hand for fine or gross manipulation. Dr. Baker found Scupien's pain to be moderate. (Tr. 361-63).

On June 30, 2014, after the ALJ rendered her decision, Dr. Gary Weiss completed a physical restrictions evaluation for November 2012 through the date of his assessment.  Dr. Weiss concluded that Scupien can sit for fifteen to thirty minutes at a time, stand and walk for five to ten minutes at a time, and that she cannot climb, balance, stoop, crouch, kneel, or crawl.  He also concluded that Scupien's impairments affect her ability to reach over her head and push and pull with her hands, but not her ability to feel with her hands or use her fingers for fine manipulation.  Dr. Weiss opined that Scupien is "permanently totally disabled," and he recommended that she not work "as of 2010."  (Tr. 403-05).

Scupien's medical records further show that she underwent multiple surgeries prior to her June 1, 2010 onset date, including carpal tunnel surgery in 1987 and 1989, back surgery in 2002, knee surgery in 2005 and 2009, and foot surgery in 2006.  (Tr. 317, 385-86).

### B. *Administrative Hearing Testimony*

Born in 1958, Scupien was 51 years old at the time of her June 1, 2010 onset date and 55 years old when she appeared at the February 14, 2014 hearing.  (Tr. 44). She testified that she has an eleventh grade education, never obtained her GED, and has not worked since her alleged onset date.  (Tr. 45-46).  She is married and lives with her husband.  (Tr. 44-45).  Scupien moved from Florida to New York in 2011 to care for her brother after he suffered a brain injury in a motorcycle accident, but she moved back to Florida sometime before the ALJ hearing.  (Tr. 44, 46).  When Scupien commenced the instant action in 2015, she resided in Medina, New York.  (Dkt. No. 1 ¶5).

On a typical day, Scupien wakes up between 5:00 and 6:00 a.m., eats breakfast, watches the news, and helps her granddaughters off to school and daycare. (Tr. 58). If the weather is nice, she will go in the pool and Jacuzzi before returning home to eat lunch and watch more news. (*Id.*). She then picks up her one granddaughter, eats dinner, and goes to bed. (*Id.*). Scupien testified that her husband cleans, cooks, grocery shops, and drives for her, although she will occasionally perform some chores around the house. (Tr. 45, 58-59). When asked if she still bicycles and does yoga, Scupien answered that she can ride her bicycle for about ten to fifteen minutes, but not every day because her knee becomes swollen. (Tr. 59-60). She no longer takes yoga classes because she cannot afford them. (Tr. 60).

Scupien testified that she can walk for ten minutes at a time, stand in one place for fifteen minutes, lift ten to twenty pounds, and sit for less than thirty minutes before needing to change positions. (Tr. 55-56). It bothers her to bend, stoop, and kneel. (*Id.*). She periodically has to lie down for relief. (Tr. 56). Her left hand is weak, which makes it difficult for her to hold objects. (Tr. 56-57). She has pain in her left hand, stomach, back, right foot, neck, left shoulder, and left knee, but she refuses to take pain medication because it makes her feel like she is "in la la land." (Tr. 50-55).

## **DISCUSSION**

### I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the]

conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner."  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner."  *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review.  The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."  *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).  The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588.  While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct.  The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions, even if supported by substantial evidence, must be applied to the correct legal standard.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  Failure to apply the correct legal standard is reversible error.  *Id.*

II.      _Standards for Determining "Disability" Under the Act_

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A).  The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  _Id._ §423(d)(2)(A).   The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." _Dumas v. Schweiker_, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting _Miles v. Harris_, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process."   20 C.F.R. §404.1520(a)(4).  These steps proceed as follows.

First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity."  _Id._ §404.1520(b).  If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience."  _Id._  Second, if the

claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c).  To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.*  As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is otherwise "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the claimant's] residual functional capacity assessment . . . with the physical and mental demands of [his or her] past relevant work." *Id.* §404.1520(f).  If, based on that assessment, the claimant is able to perform his or her past work, the

Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work, the Commissioner considers whether, based on the claimant's RFC assessment, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

The ALJ followed the required five-step process for evaluating disability claims. Under step one, the ALJ found that Scupien has not engaged in substantial gainful activity since her June 1, 2010 onset date through her December 31, 2013 DLI. (Tr. 26). At the second step, the ALJ determined that Scupien has the following severe impairments: "history of remote lumbar fusion; history of desmoid tumor, status-post resection; left shoulder degenerative joint disease; history of Morton's neuroma, status-post right foot surgery; left knee pain, status-post arthroscopy; and obesity (BMI 33)." (*Id.*). At step three, the ALJ found that Scupien does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 27). Before proceeding to step four, the ALJ assessed Scupien's RFC as follows:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform medium work as defined in [20 C.F.R. §404.1567(c)] except she could lift 25 pounds frequently and 50 pounds occasionally; stand/walk five hours in an eight hour day; sit five hours in an eight hour day; frequently balance, stoop, kneel, and crouch; never crawl; avoid hazards such as unprotected heights or dangerous machinery and full body vibration; frequently climb ramps and stairs but never climb ladders, ropes or scaffolds; and frequently reach overhead with the left upper extremity.

(*Id.*).   In other parts of her decision, however, the ALJ found that Scupien cannot perform more than a range of light work.  (Tr. 30, 32).  The Commissioner's brief does not explain this apparent inconsistency.  The ALJ should address it on remand.

Proceeding to step four, the ALJ found that Scupien is not disabled because she can perform her past relevant work as a gas station manager, sales/office worker, and restaurant manager.  (Tr. 32).  As an alternative basis for concluding that Scupien is not disabled, the ALJ proceeded to the fifth step of the sequential evaluation process. There, considering Scupien's age, education, work experience, RFC, and the testimony of a vocational expert, the ALJ found that Scupien can perform jobs that exist in significant numbers in the national economy and, therefore, that she can successfully adjust to other work.  (Tr. 32-33).  Consequently, the ALJ concluded that Scupien has not been under a disability within the meaning of the Act from her alleged June 1, 2010 onset date through her December 31, 2013 DLI.  (Tr. 33).

IV.    *Scupien's Challenges*

Scupien challenges the Commissioner's decision on two grounds:  (1) the ALJ improperly weighed the opinion of her treating physician, Dr. Baker; and (2) "[t]he ALJ's analysis was flawed and did not support her conclusions," which largely attacks the

ALJ's credibility finding.  (*See* Dkt. No. 9-1).  The Court will address each challenge in turn.

### A.  *Dr. Baker's Opinion*

Dr. Baker's opinion, to which the ALJ assigned "little weight," is that Scupien can stand for thirty minutes at a time, sit for fifteen minutes at a time, work only one to two hours per day, frequently lift five pounds, occasionally bend and stoop, and that she cannot use either hand for fine or gross manipulation.  Dr. Baker's opinion is much more favorable to Scupien than the opinion of Dr. Ahmed, a consultative examiner, to which the ALJ assigned "greater weight."  Scupien argues that the ALJ erred in assigning little weight to Dr. Baker's opinion.

Although the ALJ did not expressly find Dr. Baker to be a treating source within the meaning of the regulations, *see* 20 C.F.R. §404.1502,[6] the Commissioner does not contest this point in her brief.  Under the "treating physician rule," the ALJ is required to give controlling weight to a treating source's opinion when the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  *Id.* §404.1527(c)(2).  If the ALJ elects not to give a treating source's opinion controlling weight, she must consider the factors in 20 C.F.R. §404.1527(c) to determine the weight

---

[6]     "Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.  Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s).  We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (*e.g.*, twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).  We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability.  In such a case, we will consider the acceptable medical source to be a nontreating source."  20 C.F.R. §404.1502.

to give the opinion.  *Id.*  These factors are the frequency of examination, the length, nature, and extent of the treatment relationship, the amount of evidence supporting the opinion, the consistency of the opinion with the record as a whole, whether the treating source is a specialist, and any other factor that tends to support or contradict the opinion.  *See id.* §404.1527(c).  "After considering the above factors, the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'"  *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (alteration in original) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)).  The regulations specify that the Commissioner "will always give *good reasons*" for the weight ascribed to a treating source's opinion.  20 C.F.R. §404.1527(c)(2) (emphasis added).  "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific."  *Miller v. Colvin*, 122 F. Supp. 3d 23, 28 (W.D.N.Y. 2015) (internal quotation marks and citations omitted).  The ALJ's failure to provide good reasons for not crediting a treating source's opinion ordinarily requires remand.  *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010); *see also Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician['s] opinion . . . .").

Here, rather than give Dr. Baker's opinion controlling weight, the ALJ gave it "little weight."  She offered three reasons for her conclusion:  (1) the opinion "grossly overstates any functional limitations that could reasonably be attributed to [Scupien's] impairments"; (2) the opinion is inconsistent with "the objective evidence of record"; and (3) the opinion is inconsistent with Scupien's "reported [ ] daily activities."  (Tr. 31). Liberally construing the ALJ's explanation for giving Dr. Baker's opinion little weight, the

ALJ addressed only one of the factors in 20 C.F.R. §404.1527(c) — the consistency of the opinion with the record as a whole.   *See* 20 C.F.R. §404.1527(c)(4).   The ALJ's failure to provide a robust discussion of the applicable factors before giving Dr. Baker's opinion little weight contravenes the treating physician rule.

Moreover, the three reasons offered by the ALJ for ascribing Dr. Baker's opinion little weight are not supported by substantial evidence and do not qualify as "good reasons."   Dr. Baker did not, as the ALJ claims, "grossly overstate[ ]" Scupien's functional limitations.   To the contrary, Dr. Baker's conclusions are consistent with those of another acceptable medical source, Dr. Weiss, who similarly opined that Scupien is limited in certain physical activities.[7]   Dr. Baker's opinion is also not inconsistent with the objective evidence of record, as the ALJ concluded.   On July 3, 2012, Scupien visited Dr. Baker complaining of left wrist irritation and right foot pain.   Dr. Baker noted that a lumbar MRI of L4-L5 revealed moderate neural foramen encroachment.   He assessed right foot pain and carpal tunnel in left wrist.   Dr. Baker treated Scupien for sciatic nerve pain in August 2012 as well.   On January 3, 2014, less than a month before Dr. Baker rendered his opinion, Scupien visited him regarding acute left shoulder pain and acute left knee pain with edema, among other things.   Dr. Baker noted reduced abduction to sixty degrees in Scupien's left shoulder and tenderness across her left upper back with movement and trace edema.   A neurologic exam revealed paresthesia in the third, fourth, and fifth fingers of her left hand, while a left shoulder x-ray revealed acromioclavicular degenerative changes.   Due to the severity of Scupien's pain, Dr.

---

[7]     While the ALJ did not have the benefit of Dr. Weiss' opinion because it was first submitted to the Appeals Council, the opinion is now part of the record and must be considered in reviewing the ALJ's decision.   *See Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015).   Moreover, although Dr. Weiss rendered his opinion on June 30, 2014, after Scupien's December 31, 2013 DLI, the opinion may be considered because it relates back to November 2012.   *See Dailey v. Barnhart*, 277 F. Supp. 2d 226, 233 n.14 (W.D.N.Y. 2003).

Baker referred her to Dr. Coren.   On January 6, 2014, Dr. Coren assessed cervical radiculopathy, osteoarthritis of the left knee, and left shoulder pain.   An x-ray of Scupien's cervical spine revealed foraminal narrowing at C4-5 and C5-6 bilaterally as well as osteoarthritic changes and degenerative disc disease, a left shoulder x-ray revealed osteoarthritic changes in the left AC joint with inferior osteophytes, and a left knee x-ray revealed moderate narrowing of the medial articular cartilage space consistent with arthritis.   It was only a few weeks later that Dr. Baker rendered his opinion that Scupien is limited in her ability to sit, stand, lift, bend, and stoop, and that she cannot use her hands for fine or gross manipulation.   The ALJ's conclusion that Dr. Baker's opinion is inconsistent with "the objective evidence of record" fails to account for the foregoing evidence.

The ALJ's third reason for assigning Dr. Baker's opinion little weight — that it is inconsistent with Scupien's reported daily activities — also is not supported by substantial evidence.   In reaching this conclusion, the ALJ seems to have relied upon the following evidence regarding Scupien's daily activities:   Scupien's hearing testimony, a questionnaire that Scupien completed on May 31, 2012 (Tr. 187-94), and medical records regarding Scupien's pain management treatment with Dr. Richardson in 2012.   Contrary to the ALJ's finding, Scupien's hearing testimony is actually consistent with Dr. Baker's findings because it shows that her daily activities — eating, helping her granddaughters off to school and daycare, relaxing in the pool and Jacuzzi, and sleeping — are quite limited and require little to no exertion.   The questionnaire that Scupien completed in 2012 likewise does not support the ALJ's conclusion.   Although the ALJ correctly notes that Scupien said she can prepare simple meals, the ALJ

overlooks that Scupien further commented that she struggles with cooking due to weakness in her wrists and hands.  Similarly, the ALJ relied upon Scupien's stated ability to perform light household chores but overlooked her statement that she cannot perform chores at length.  Read in its entirety, the questionnaire does not contradict Dr. Baker's opinion but rather supports it.  Dr. Richardson's pain management records also do not contradict Dr. Baker's opinion.  At appointments on September 4 and October 1, 2012, Scupien advised Dr. Richardson that she could swim, bicycle, and do yoga on account of pain medication she began taking in August 2012.  However, on October 29, 2012, Scupien advised Dr. Richardson that she discontinued her pain medication.  She was offered a different type of pain medication, but at the ALJ hearing, she testified that she no longer takes pain medication due to the side effects.  Scupien's ability to swim, bicycle, and do yoga in 2012 thus seems to have been short lived, which is significant because Dr. Baker did not render his medical source statement until over one year later.

In sum, the ALJ violated the treating physician rule by failing to provide good reasons for assigning Dr. Baker's opinion little weight and by not consulting the factors in 20 C.F.R. §404.1527(c) in deciding what weight to give the opinion.  The case is remanded for further consideration and proper application of the treating physician rule.

B. *Credibility*

Scupien also argues that the ALJ improperly assessed her credibility.  "A treating physician's opinion is a significant part of the evidence that is weighed in determining credibility of a claimant under 20 C.F.R. §404.1529."  *Lasker v. Comm'r of Soc. Sec.*, No. 15-CV-923-MJR, 2017 WL 130267, at *8 (W.D.N.Y. Jan. 13, 2017) (quoting *Gagovits v. Colvin*, No. 15-CV-3246(JS), 2016 WL 4491537, at *13 (E.D.N.Y. Aug. 25,

2016)).  Therefore, because the Court is remanding this matter for proper application of the treating physician rule, the ALJ should readdress Scupien's credibility on remand as well.  *See id.*

## CONCLUSION

For the foregoing reasons, Scupien's motion for judgment on the pleadings (Dkt. No. 9) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 10) is denied, and this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      March 20, 2017
            Buffalo, New York

                                        */s/ Michael J. Roemer*
                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge